# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**October 28, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**M.C., a protected individual,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-325**        (Bd. of Review No. 23-BOR-1783)

**WEST VIRGINIA DEPARTMENT**
**OF HEALTH AND HUMAN RESOURCES,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner M.C.[1] appeals the June 22, 2023, decision of the West Virginia Department of Health and Human Resources Board of Review ("Board") resulting from a fair hearing regarding M.C.'s eligibility for the State's Intellectual and Developmental Disabilities ("I/DD") Waiver Program. The West Virginia Department of Health and Human Resources, Bureau for Medical Services ("BMS") filed a timely response.[2] M.C. filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Consistent with West Virginia practice in cases with sensitive facts, we use initials to protect the identities of those involved. *See B.J.R. v. Huntington Alloys Corp.*, No. 20-0548, 2022 WL 123125, at *1 n.1 (W. Va. Jan. 11, 2022) (memorandum decision); *see also* W. Va. R. App. P. 40.

[2] M.C. is represented by Michael J. Folio, Esq. BMS is represented by Patrick Morrisey, Esq., and Gary L. Michels, Esq.

M.C., who was fifty-nine years old at the time of the underlying decision, applied for the I/DD Waiver Program.[3, 4] On February 21, 2023, BMS sent M.C. a Notice of Decision indicating that his application to participate in the I/DD Waiver program was denied, stating that his application did not include the required documentation to support the "documented history of the presence of an eligible diagnosis with concurrent substantial adaptive deficits within the developmental period – prior to the age of 22." The denial letter also indicated that "a primary diagnosis of serious mental illness is specifically excluded from eligibility." On May 18, 2023, Disability Rights of West Virginia ("DRWV") filed a Request for Hearing to challenge the denial on M.C.'s behalf.

A fair hearing before a State Hearing Officer was held on June 7, 2023. M.C. was represented by Gina Desmond, Senior Advocate for DRWV. BMS appeared by Charley Bowen, Licensed Psychologist and Long-Term Care Clinical Consultant. M.C.'s sister appeared as a witness on his behalf. By decision dated June 22, 2023, the Board of Review affirmed BMS's decision to deny I/DD Waiver benefits to M.C.

The I/DD Waiver Program requires evidence of intellectual disability with concurrent substantial deficits that manifest before age twenty-two, or a related condition which constitutes a severe and chronic disability with concurrent substantial deficits manifested before age twenty-two. An applicant who has a qualifying diagnosis must also meet the requirement that the diagnosis is likely to continue indefinitely and must have at least three substantial deficits out of the six identified major life areas identified in BMS Provider Manual Chapter 513.6.2.2. Those include: 1) Self-care; 2) Receptive or expressive language (communication); 3) Learning (functional academics); 4) Mobility; 5) Self-direction; and 6) Capacity for independent living which includes the following six sub-domains: 1) home living; 2) social skills; 3) employment; 4) health and safety; 5) community; and 6) leisure activities, with the requirement that at least three of the sub-domains must be substantially limited to meet the criteria in these major life areas.

The BMS Provider Manual defines "substantial deficits" as

[S]tandardized scores of three standard deviations below the mean or less than one percentile when derived from a normative sample that represents

---

[3] The West Virginia I/DD Waiver Program is a federally approved home and community-based program for individuals with intellectual and developmental disabilities. It is designed to provide services and support to those individuals and promote choice, independence, respect, and dignity, by providing person-centered services as an alternative to long-term inpatient care.

[4] Based on the record, M.C. had previously applied for the I/DD Waiver Program and received Notices of Denial dated January 7, 2016, and September 28, 2020.

the general population of the United States, or the average range or equal to or below the 75th percentile when derived from [Intellectual Disability (ID)] normative populations when intellectual disability has been diagnosed and the scores are derived from a standardized measure of adaptive behavior.

*Id*. Evidence of substantial deficits must be obtained through standardized testing to measure adaptive behavior and must be administered and scored by properly trained and credentialed professionals, and must also be included in the narrative descriptions contained in the documents produced for review. *Id*.

The BMS Provider Manual further requires that "[d]ocumentation must support that the applicant would benefit from continuous active treatment. Active treatment includes aggressive consistent implementation of a program of specialized and generic training, treatment, health services, and related services. *Id*. at Chapter 513.6.2.3.

M.C. allegedly suffered a traumatic brain injury ("TBI") in 1972 when he was eight years old after his mother threw him from a second-story window as they escaped from a house fire. TBI is a "related condition" that ordinarily qualifies for an I/DD waiver, but, according to BMS, M.C. lacks substantiating medical and academic records from the necessary period that demonstrate the severity of the head injury and the adaptive functional deficits that it caused. The hospital that treated M.C. in 1972 for the TBI is closed and other childhood medical and school records are apparently unavailable either because the facilities closed or because of a flood.

However, M.C. asserts that his available records and history suggest substantial cognitive deficits consistent with the TBI sustained in childhood. M.C. was in special education classes during high school because of learning disabilities. At age eighteen, he was involuntarily committed to a psychiatric hospital for the first time for behavior that his sister asserts was a result of the TBI. When he was nineteen, in 1983 the Social Security Administration determined that M.C. was disabled based on mental retardation code 3180.[5]

M.C.'s sister is his legal guardian and caretaker and she testified that he is not capable of attending to activities of daily living without assistance or supervision due to his cognitive deficits. An independent psychological evaluation conducted in 2023 determined that M.C. has little chance of living independently without community supports because of his impairments. M.C. asserts that he has undergone a repeated cycle of involuntary commitments in psychiatric hospitals during which his psychiatrists conclude he is clinically stable for discharge and ready for a less restrictive community placement, but he has not received the outpatient services necessary to avoid additional involuntary

---

[5] In 2010, Congress enacted legislation that struck the phrase "mental retardation" from federal statutes and replaced it with the phrase "intellectual disability."

3

recommitments. Accordingly, M.C. argues that eligibility for the I/DD Waiver Program would break that cycle and permit him to receive services consistent with his needs and with the duty of the community mental health center.

This appeal is governed by the following standard of review:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
(1)     In violation of constitutional or statutory provisions;
(2)     In excess of the statutory authority or jurisdiction of the agency;
(3)     Made upon unlawful procedures;
(4)     Affected by other error of law;
(5)     Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code § 16-1-22a(c) (2023) (designating West Virginia Code § 29A-5-4 as governing standard of review for Board of Review appeals).

On appeal, M.C. raises two assignments of error. First, he argues that the I/DD Waiver Program is facially discriminatory and violates statutory provisions by requiring him and others in his age cohort to produce evidence to determine their eligibility that neither existed nor was required by law at the time M.C. was twenty-two years old. In the decision on appeal, the ALJ notes that M.C. participated in special education classes but that school records such as his Individualized Education Plan ("IEP") were not provided that would address his level of impairment. However, M.C. argues that IEPs did not yet exist when he was a student, so it would be impossible for him to have produced an IEP to demonstrate his level of impairment through such a document. Moreover, M.C. contends that Congress did not enact laws to require schools to provide educational supports for students with a TBI until at least seven years after M.C. finished school. Accordingly, M.C. alleges that the Board's decision was clearly erroneous as it was based on the faulty legal testimony of BMS's expert witness regarding IEPs.

Upon review, we disagree. The denial of I/DD Waiver benefits was not based solely on M.C.'s failure to produce an IEP with his application for benefits. Rather, the basis for the denial was that "documentation submitted for review did not indicate an eligible program diagnosis of either intellectual disability or a severe related condition with concurrent substantial deficits within the developmental period (prior to age 22)" as is

4

required for eligibility. The Hearing Officer noted that M.C.'s age made it difficult to obtain medical records prior to age twenty-two, but also noted that records could have been submitted from the Social Security Administration to demonstrate what criteria it used in reaching its disability rating in 1983 and whether that might meet the eligibility criteria for an I/DD Waiver. Unfortunately, no SSA records were provided, and it was not possible to determine whether M.C.'s condition prior to age twenty-two met medical eligibility criteria. Moreover, there was not sufficient evidence to demonstrate that an intellectual disability predated the onset of a major mental illness. Records indicate that M.C. has had diagnoses of multiple mental health conditions, including schizoaffective disorder, bipolar type; alcohol dependence (uncomplicated); cannabis abuse; and antisocial personality disorder. Mental illness is specifically excluded as a potential eligible diagnosis for the I/DD Waiver Program under BMS Provider Manual Chapter 513.6. As the Board's Hearing Officer noted, because of the lengthy history of mental illness diagnoses, it is not clear whether the mental illnesses preceded the intellectual disability. It is further unclear from the record before us whether the numerous institutionalizations and involuntary commitments have been the result of these mental health conditions, intellectual disability, TBI, or some combination thereof.

Furthermore, the evidence before the Board showed that M.C. underwent an Independent Psychological Evaluation ("IPE") in 2015, at age fifty-two, that showed no areas of substantial adaptive skills deficit, as required for eligibility in BMS Provider Manual Chapter 513.6.2.1.[6] Another IPE conducted in 2020 found some adaptive skills deficits, suggesting some deterioration between ages fifty-two and fifty-seven. The 2023 IPE found further diminishment in M.C.'s adaptive life skills assessment from the 2020 evaluation, but none of these reports substantiated substantial adaptive deficits in at least three of six major life areas that manifested prior to age twenty-two. Accordingly, we find no merit in M.C.'s first assignment of error and no basis to reverse the Board's decision.

For his second assignment of error, M.C. argues that the Board's decision is clearly wrong, arbitrary and capricious, and characterized by abuse of discretion because in both the 2020 and 2023 IPEs, M.C. had high levels of impairment in a majority of the nine adaptive skills categories and clearly needs assistance with basic tasks of daily living. He asserts that his need for assistance, coupled with the extensive rate of his involuntary commitment in state hospitals throughout his adult life, shows that he should be eligible to receive the supports the I/DD Waiver Program was created to provide. M.C. argues that the I/DD Waiver services will break the vicious cycle of commitment, discharge, and re-

---

[6] At that time, M.C. was recommended to continue inpatient psychiatric treatment due to his "dangerousness." The psychologist who evaluated M.C. found that he had "much difficulty functioning appropriately in the general population due to his chronic mental illness," and that he "had reported history of mood fluctuations with aggressive tendencies leading to yet another hospitalization."

commitment that he has been in since he was first involuntarily committed to a state psychiatric hospital as a young adult.

We find no legal merit in this argument. As addressed in response to the first assignment of error, because M.C. did not meet the criteria required for I/DD Waiver Program eligibility, we cannot say that the Board's decision was clearly wrong, arbitrary and capricious, or was an abuse of its discretion.

Accordingly, we affirm the Board's June 22, 2023, decision.

Affirmed.

**ISSUED:** October 28, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear